
FILED
2010 Jul-26  PM 04:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **PAMELA INGRAM, o/b/o J.B.I.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **4:07-cv-324-AKK** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff Pamela Ingram ("Plaintiff") brings this action on behalf of her son, J.B.I., pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of Social Security Administration ("SSA") denying her application for supplement security income under Title XVI.  This Court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence.  Therefore, for the reasons elaborated fully below, the Court **AFFIRMS** the decision denying benefits.

## I.  Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id*.  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of

the ALJ's findings is limited in scope, however, the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## II.  Statutory and Regulatory Framework

A claimant under the age of eighteen is considered disabled if the claimant has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which is expected to result in death, or which has lasted or is expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(C)(I).[1]  The regulations define the statutory standard of "marked and severe functional limitations" in terms of "listing-level severity."  20 C.F.R. §§ 416.902, 416.906, 416.924(a), 416.926a(a); *see* 20 C.F.R. pt. 404, subpt. P, app. 1 (the listings).  The Commissioner has developed a specific sequential evaluation process for determining whether a child claimant is disabled. 20 C.F.R. § 416.924.  The three-step process requires a child to show:  (1) that he is not working; (2) that he has a "severe" impairment or combination of impairments; and (3) that his impairment or combination of impairments is of listing-level severity, that is, the impairments meet, medically equal, or functionally equal the severity of an impairment in the listings.  20 C.F.R. §

---

[1] SSA's Regulations promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through March 12, 2010.

416.924.

If a child claimant is not working and has a severe impairment, the ALJ must determine if the child's impairments meet or medically equal an impairment listed in the listings. 20 C.F.R. § 416.924(a)-(d).  If they do not, the ALJ must then determine if the child's impairments are functionally equivalent in severity to a listed impairment. 20 C.F.R. §§ 416.924(d), 416.926a(a).  For the child's impairments to functionally equal a listed impairment, they must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a).  The ALJ considers the child's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi).  If the impairments do not satisfy the duration requirements, or do not meet, medically equal, or functionally equal one of the listings in the Regulations, a finding of not disabled is reached and the claim is denied.  *See* 20 C.F.R. § 416.924(d)(2).

### III.  Factual and Procedural History

On October 15, 2002, Plaintiff filed an application for SSI benefits on behalf of her minor child, J.B.I. ("Claimant"), alleging disability based on

obsessive compulsive behavior ("OCD"), attention deficit hyperactivity disorder

("ADHD"), eye disease, depression, and sleeping disorder.  (R. 77-88 ).  The

Administrative Law Judge ("ALJ") held a hearing on November 13, 2003, (R.

327-353), and on December 16, 2003, denied the application, holding that the

Claimant's severe impairments of ADHD, oppositional defiant disorder ("ODD")[2],

and OCD neither met nor equaled a listing.  (R. 30-41).  Plaintiff filed requests for

appeal on January 6, 2004, and April 7, 2005, and the case was remanded on

September 23, 2005.  (R. 14).

On July 8, 2006, a different ALJ denied Plaintiff's application, finding that

the Claimant's severe impairments of adjustment disorder, ADHD, depressed

mood, and ODD neither met nor equaled a listing.  (R. 14-25).  The Appeals

Council denied the request for review, (R. 6-9), and Plaintiff filed timely an action

for judicial review on February 20, 2007.[3]  Doc. 1.

On August 31, 2007, this court remanded the case for "failure of the [ALJ]

to fully develop the record."  Doc. 14.  After a hearing on September 11, 2008, (R.

474-503), the ALJ denied Plaintiff's application for SSI benefits on December 10,

---

[2] This diagnosis was not listed in Claimant's October 15, 2002, application for SSI benefits.

[3] This case was reassigned from Judge U.W. Clemon, who retired in January 2009, to the undersigned on May 17, 2010.

2009.  (R. 367-83).  The ALJ held that the Claimant's severe impairments of

ADHD and depression neither met nor equaled a listing.  *Id*.  The Commissioner's

final decision that the Claimant is not disabled is properly before this court,

pursuant to section 1613(c)(3) of the Social Security Act, 42 U.S.C. § 1383(c)(3).

At the time of the September 11, 2008, hearing, the Claimant was fifteen

years old.  (R. 477).  Claimant is now seventeen years old, and is still a minor

child under the SSA statute.  42 U.S.C. § 1382c(a)(3)(C)(I).

## IV.  The ALJ's Decision

Under step one of the three-part test, the ALJ found that the Claimant had

not engaged in any substantial gainful activity after the alleged onset date of

disability on September 30, 2002.  (R. 370).  Accordingly, the ALJ proceeded to

step two, where the ALJ found that the Claimant had severe impairments of

ADHD and depression.  *Id*.  The ALJ then evaluated the Claimant under step

three.  Here, the ALJ determined first that the "claimant does not have an

impairment or combination of impairments that meets or medically equals one of

the listed impairments."  (R. 372).  Second, the ALJ found that the "claimant does

not have an impairment or combination of impairments that functionally equals the

listing."  (R. 374).  Based on these findings, the ALJ concluded that the Claimant

has not been "disabled, as defined by [SSA], since September 30, 2002."  (R. 383).

## V.  Analysis

This court's review is limited in that it must give deference to the Commissioner's findings of fact.  *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Graham v. Bowen*, 790 F.2d 1572, 1574-75 (11th Cir. 1986)).  In contrast to factual findings, however, the Commissioner's conclusions of law are subject to an "exacting examination" or *de novo* review.  *See Martin*, 894 F.2d at 1529 ("The Secretary's failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal.") (citations omitted).

A.     The ALJ's findings are based on substantial evidence.

The Claimant contends that the ALJ's decision is not supported by substantial evidence because, (1) his findings are inconsistent with his analysis of the facts, and (2) he rejected the treating physician's opinion.  Doc. 22 at 7-9.

    *1.     The ALJ's findings are consistent.*

The Claimant argues that the ALJ's finding of a "marked" limitation in concentration, persistence, and pace is inconsistent with his finding of a "less than marked" limitation in attending and completing tasks.  Doc. 22 at 8.  In other words, the Claimant argues that the evidence used to support a "marked" limitation in concentration, persistence, and pace should have likewise supported a

finding of "marked" limitation in attending and completing tasks.  Further, the
Claimant argues that the ALJ's finding of a "less than marked" limitation in ability
to function personally is inconsistent with his finding of "no limitation" in his
ability to care for himself.  *Id.*  The Claimant states that these findings are "both
consistent and inconsistent with the most recent assessments of Plaintiff's treating
physician."  *Id*. at 9.

        To support his finding of a "less than marked" limitation in attending and
completing tasks, the ALJ relied on teacher statements and evaluations from 2004
through 2008.  For example, in May 2003, the Claimant was evaluated by his
reading, home-room, and science  teachers.  When asked if the Claimant had
"special education exceptionalities," one teacher responded "none," and two
teachers replied that he "has some attention problems."  (R. 128).  In response to
how the Claimant performs academically, all three teachers responded that he is
"is above average," and one teacher also added that he "doesn't always have
homework."  *Id.*  When asked if he interacted with and responded well to adults,
one teacher commented that she has "never observed [the Claimant] acting in
anyway that is not age appropriate."  *Id*. at 129.  Another teacher commented that
the "only time [the Claimant] did not act appropriately in class, he had not had his
medicine."  *Id*.  In response to the Claimant's ability to understand, follow

instructions, work independently, and concentrate and pay attention, the teachers commented that the Claimant has: (1) an A average [reading]; (2) a little trouble paying attention; and (3) trouble paying attention (often). *Id*. Lastly, when asked about the Claimant's ability to complete tasks, all three teachers responded that he has "no problems." *Id*

On his 2003 report card, the Claimant's language grade was 70 and the language teacher commented that the Claimant "does not turn in all assignments." (R. 139). On that same report card, his science grade was 88 and his science teacher commented that he "fails to do homework." *Id*. There were no other comments listed. On his 2006 report card, the Claimant's family and consumer science grade was 53 and his teacher commented that he was "not completing assignments." (R. 147).

On September 8, 2008, his teacher completed a child development and functioning rating form and indicated that the Claimant had a "less than marked" limitation in attending and completing tasks. (R. 472).[4] She remarked that the Claimant missed assignments, but that his "test scores are fair to good," and that

---

[4] On the September 2008 child development and functioning rating form, the same teacher also indicated the following: "no evidence of limitation" in health and physical well-being, acquiring and using information, moving about and manipulating objects, and caring for self, and "less than marked" limitation in interacting and relating to others. (R. 471-472).

she has "no discipline problems."  *Id*.  Based on this evidence, although the

Claimant "has a history of failing to turn in assignments," the ALJ's finding that

he has a "less than marked" limitation in attending and completing tasks is

supported by substantial evidence.  (R. 378).

Alternatively, even if the ALJ committed error in assigning a "less than

marked" limitation in attending and completing tasks, such error was harmless

because none of the ALJ's functional ratings were "marked" or "severe."  For a

record of functional disability to exist, at least two domains must be "marked" or

at least one "severe."  Therefore, even if the ALJ gave the Claimant a "marked"

limitation in attending and completing tasks, the ALJ's determination fails to

substantiate the viability of the functionality prong.  *See, e.g., Diorio v. Heckler*,

721 F.2d 726, 728 (11th Cir. 1983) (applying the harmless error doctrine in the

contest of a social security case).

The Claimant's argument that the ALJ's findings of "less than marked"

limitation in ability to function personally and "no limitation" in ability to care for

self are inconsistent is unpersuasive also.  Doc. 22 at 8.  The Claimant alleges that

the ALJ took "different view[s]" when he inconsistently evaluated the Claimant's

sleeping problems.  *Id*.  However, in evaluating the Claimant under both criteria,

the ALJ correctly acknowledged that the Claimant's "sleeping problems" have not

been continuous. (R. 373, 382). Further, the Claimant's "sleeping problems" are only one measure by which the ALJ evaluated the Claimant under both criteria and did not form the basis for its decision. Therefore, the Claimant's argument is without merit.

2.    *The ALJ did not err in the weight assigned to the treating physician.*

The Claimant argues that the ALJ's findings are not based on substantial evidence because they are "based on rejection" of the Claimant's treating physician Dr. Rosa Cieszkowski. Doc. 22 at 9. "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." *McGregor v. Bowen*, 786 F.2d 1050, 1053 (11 Cir. 1986). In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight . . . ." *McGregor*, 786 F.2d at 1053. If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true. *Id*. The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence. *Id*. at 1054.

The ALJ provided the following explanation regarding the weight given to the treating physician:

> [L]ittle weight is given to the opinions of Dr. Cieszkowski, which were expressed through a checkbox form drafted and submitted by the claimant's attorney.  She did not give any explanation as to how or why she rated the claimant in each domain, and she did not give specific examples within her records to support her opinions.  In addition, in 2005, when she was asked by Judge Robert Faircloth to clarify her opinions from 2003, she responded by discussing the claimant's most recent treatment.  Although she is the claimant's treating physician, her opinions regarding the claimant's abilities are not supported by her treatment notes, especially her last opinion from January 2006, in which she opined that the claimant had marked limitations in all domains.  In reviewing Dr. Ciezkowski's treatment records, the claimant is generally appropriate in his appearance and grooming.  He usually shows good judgment and insight, reports good sleep, has a good appetite, has a normal orientation, and is noted as calm.  These observations do not support a finding of marked limitations in any domain.

(R. 375).

The ALJ's decision is supported by substantial evidence.  The January 2006 evaluation completed by Dr. Cieszkowski indicates the Claimant has a "marked limitation" in every functional domain, and in the criteria for evaluating ADHD of inattention, impulsiveness, and hyperactivity.  (R. 283-85).[5]  As the ALJ notes, Dr. Ciezkowski left blank the comments section.  (R. 284).

---

[5] On November 12, 2003, Dr. Ciezkowski indicated that the Claimant had a "marked" degree of limitation in three functional domains –  health and physical well being, attending and completing tasks, and interacting and relating to others – a less than "marked" degree of limitation in caring for self, and no limitation in moving about and manipulating objects. (R. 276-77).  Dr. Ciezkowski also noted a "marked" degree of limitation in the Claimant's inattention, impulsiveness, and hyperactivity related to his ADHD.  (R. 278).

After reviewing Dr. Cieszkowski's treatment notes from 2004 through 2005, the ALJ properly discounted her January 10, 2006, Child Development and Functioning Rating.  Dr. Cieszkowski saw the Claimant eight times in 2004, and her treatment notes for four of those visits indicated that the Claimant was doing (1) "better" (R. 302), (2) "well" (R. 301), (3) "good," (R. 300), and (4) "ok," (R. 294).  There were no treatment notes recorded for one of those eight visits. (R. 299).

Dr. Cieszkowski saw the Claimant seven times in 2005.  The treatment notes for four of the visits indicated that Claimant (1) is doing "well" and improved "several grades from F's to B's," (R. 291), (2) "reports no major problems, [patient] is going to 7th grade" (R. 290), (3) "has been doing well, except for [increased] appetite" (R. 289), and (4) "has been doing well on current medications," (R. 288).  These treatment notes do not indicate that the Claimant has "marked" limitations in any functional domain.  Indeed, by Dr. Cieszkowski's own evaluations during 2004 and 2005, the Claimant was well adjusted and stable. Based on this court's review of Dr. Cieszkowski's treatment notes, the ALJ properly gave "little weight" to her findings.  Further, the ALJ's reasons for refusing to credit Dr. Cieszkowski are supported by substantial evidence.

As to the other medical evidence, the ALJ stated that he gave "substantial

weight" to psychologist Dr. Mary Arnold and the State Agency medical advisor

Dr. Mark Williams because their findings were "consistent with the medical record

as a whole." (R. 376). Dr. Arnold found that the Claimant had "a history of

ADHD and depression" and "tends to be rather rigid." (R. 200). She diagnosed

the Claimant with ADHD/Adjustment disorder with depressed mood and

compulsive-like features. *Id.* She stated that his prognosis was "stable, with the

benefit of mental health continued treatment, within the next 6-12 months." *Id*. at

201. Dr. Williams diagnosed the Claimant with ADHD and Adjustment Disorder

with depressed mood. (R. 149). He also commented that "the evidences [sic] do

not support the presents [sic] a severe and marked functional impairment." (R.

157). Based on the record before it, Dr. Arnold and Dr. Williams' opinions are

consistent with the record as a whole, and therefore, the ALJ's decision to apply

"substantial weight" to them is supported by substantial evidence.

B.     The ALJ fully developed the record.

       The Claimant argues that the ALJ failed to fully develop the record because

(1) "the last records from the treating mental health source were dated July 21,

2008," and the "ALJ would have had no way of knowing [the Claimant's] mental

or academic status or level of functioning for the period of July 2008 to December,

10, 2009," (2) he gave "great weight to a teacher's opinion" from September 2008

"without knowing whether the same opinion would be warranted well over a year later," and (3) he "failed to obtain a medical opinion as to medical equivalence at least for a period in the long history of this claim."  Doc. 22 at 11-12.

These arguments are without merit.  The ALJ undertook an expansive and detailed review of evidence spanning ten years, from 1998, several years before the Claimant's application of disability in September 2002, through September 2008.  Further, if the Claimant had gathered additional relevant information prior to the ALJ's decision, the Claimant should have supplemented the record.  *See* 20 C.F.R. § 404.900(b) ("In each step of the review process, you may present any information you feel is helpful to your case.  [We] will consider at each step of the review process any information you present as well as all the information in our records.").  Given the Claimant's failure to do so, he cannot now use the period of time between the hearing and the decision as a basis to argue for reversing the Commissioner's decision.

As it relates to the Claimant's teachers' opinion, the court cannot discount them.  While teachers are not trained to make medical and psychological diagnoses, they are often in the best position to observe a child's functional abilities, including mental capacity, level of concentration, social skills, hygiene, and ability to complete tasks.  Additionally, teachers have the opportunity to

observe their students consistently over a prolonged period of time, which enhances the reliability of their observations.  The ALJ's reliance on the Claimant's teachers' observation is appropriate, and cannot be used as a basis to show that the ALJ failed to fully develop the record.  Indeed, the record contained a teacher rating form completed in September 2008, which was the most current school year as of the time of the hearing.  Further, because Claimant's counsel made the teachers' evaluations part of the record, the ALJ should have considered them indeed.

Lastly, the Claimant argues that the ALJ failed to obtain a medical expert's opinion in order to show that the Claimant had a condition that was medically equivalent to one in the Listing of Impairments.  Doc. 22 at 13.  The ALJ is not required to order a consultive examination as long as the record contains sufficient evidence for him to make an informed decision.  *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001).  The Claimant's record is replete with medical opinions from his treating physicians throughout the continuum of his application for disability.  As such, this court has not independently identified an issue that necessarily requires further medical development or opinion evidence.  Therefore, the record here is adequately complete in light of the information provided through the Claimant's treating sources, and the ALJ did not commit legal error in

its development.

## VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination

that the Claimant is not disabled is supported by substantial evidence, and that the

ALJ applied proper legal standards in reaching this determination.  The

Commissioner's final decision is, therefore, AFFIRMED.  The court will enter a

separate order in accordance with this memorandum opinion.

Done the 26th day of July, 2010.


_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE